FILED
2007 Aug-16 AM 09:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| AMERICAN METAL TECHNOLOGY, INC., a corporation, | )<br>)<br>)<br>) |
| Plaintiff, | ) CIVIL ACTION NO. |
| vs. | )<br>)<br>) |
| WEBCO INDUSTRIES, INC., a corporation, | )<br>)<br>)<br>) |
| Defendant. | ) |

## COMPLAINT

Comes now the plaintiff, American Metal Technology, Inc. ("Amtech"), a corporation, and brings this Complaint against Webco Industries, Inc. ("Webco"), a corporation, seeking a declaratory judgment and other relief, and shows unto the Court the following:

1. Amtech is an Alabama corporation with its principal place of business in St. Clair County, Alabama.

2. Webco is an Oklahoma corporation with its principal place of business in or near Tulsa, Oklahoma.

3. Jurisdiction of this Court is based in part upon 28 U.S.C. § 1332(a) in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds seventy-five thousand dollars, exclusive of interest and costs. The Court also has jurisdiction under 28 U.S.C. § 1331 (federal question) and under 28 U.S.C. § 1337 (commerce). Venue is

proper in this division as many of the acts and practices complained of occurred in this division where plaintiff's principal place of business is located.

4. Amtech is in the business of producing and selling metal tubular products. It purchases raw materials and tubing from others, some of which is sold without further processing and some of which is processed to produce tubing, or to bend it or cut it or otherwise adapt it to customer needs.

5. Webco is a former supplier of Amtech, having at one time been one of Amtech's major suppliers, particularly of tubing made of special 29-4C and 409 alloys. Amtech developed a market for 29-4C alloy tubing, selling to a major manufacturing company, until Webco, acting on its own and in combination with others, refused to sell any more of the 29-4C alloy tubing to Amtech as of December 2006. Webco did so in order to take that market away from its customer Amtech and serve it directly for Webco's own benefit. Webco's actions have deprived Amtech of approximately $4,000,000 of annual profitable sales. Webco has a monopoly in 29-4C alloy tubing, which it protects through exclusionary actions such as the termination of Amtech and taking over sales to customers developed by Amtech.

6. Webco terminated its supplier relationship with Amtech as of December 31, 2006. However, Webco over-ordered a supply of 409 alloy tubing, and notwithstanding its own decision to cut off Amtech as a customer, Webco has sought persuade Amtech to purchase from it this over-ordered quantity of 409 alloy tubing. Amtech did buy some of the over-ordered quantity, but due to market conditions and due to its own efforts to produce the 409 alloy tubing to protect itself from Webco's termination of the Webco-Amtech supplier-customer relationship, Amtech does not need or want the remainder of the over-order, which (when fabricated from strip steel to tubing) would amount to about 520,000 feet of 409 alloy tubing. There have been

considerable negotiations, but there has been no agreement as to the purchase of any further 409 alloy tubing by Amtech from Webco. Nevertheless, Webco contends that Amtech is contractually obligated to purchase the remaining over-order.

7.  In an effort to destroy Amtech as both a competitor and potential competitor, Webco unilaterally and without any legal or other justification shortened Amtech's payment terms in 2006 from 50 days to 5 days. Webco claimed it had the authority to do this under its "terms and conditions" which had not been a part of any contract or purchase order between Amtech and Webco. Indeed, if any terms and conditions applied, other than those embodied on the face of the order, they would be Amtech's terms and conditions, not those of Webco. There never was any credit impairment that would have represented a legitimate business reason to make such an abrupt and drastic change in the previously agreed terms of sale.

8.  Furthermore, in its anticompetitive campaign against Amtech, Webco on about November 13, 2006, filed suit against Amtech in a state court in Oklahoma (the "Oklahoma lawsuit") claiming without basis that Amtech owed Webco $1,171,868.32, alleging vaguely that "Amtech is no longer within the payment terms agreed to by Webco." A copy of the Petition so filed by Webco against Amtech in the Oklahoma lawsuit is attached hereto as Attachment "A." Amtech was not in default of any valid credit terms at the time and paid Webco the entirety of all amounts due, in a timely manner as understood by Amtech. The substance of this maliciously filed lawsuit was false, and, knowing its falsity, Webco delayed requesting issuance of a summons. In fact, Webco expected and hoped its withdrawal of the credit terms from Amtech would bankrupt or otherwise severely impair Amtech to such an extent that its credit restrictive action would cause the allegations in the Oklahoma lawsuit to become true, even though false at the time the Oklahoma lawsuit was filed. In fact, the material allegations never became true, and

Amtech was never served with process in that case. Amtech learned about the Oklahoma lawsuit only when it received a telephone call from a lawyer in Oklahoma who stated he had noticed the filing of the Oklahoma lawsuit and wondered if Amtech needed legal representation. Webco maliciously allowed this meritless lawsuit to remain pending for many months after Webco had been paid in full, and after Webco in fact had terminated its supplier-customer relationship with Amtech. It was only on June 6, 2007, that the district court in Oklahoma entered an order of dismissal, apparently *sua sponte*, for failure to obtain service within 180 days.

9. Webco in its Oklahoma lawsuit also attempted to obtain validation for Webco's own anticompetitive conduct. Recognizing that its actions against Amtech exposed Webco to liability on several grounds, Webco in the Oklahoma lawsuit added a count for a declaratory judgment to the effect that Webco's "conduct and communications . . . were . . . not in violation of any legal obligations or restrictions and did not constitute intentional interference with contractual relations, prospective business advantage, breach of contract, unfair competition, bad faith, or any recognizable action in tort, contract or otherwise." The prayer for relief asked the Court to find "no liability for its [Webco's] conduct in the conclusion of its business with Amtech or its attendant efforts to pursue post-contract business with other entities." The inclusion of such request for exoneration of its anticompetitive practices in connection with what purported to be a collection lawsuit (although for a non-existent debt) is extraordinary and shows Webco itself recognizes the unlawful and anticompetitive nature of its conduct.

1/1609175.1
4

## COUNT ONE
### (Declaratory Judgment)

10. There is hereby incorporated by reference, to the full extend as if set forth verbatim herein, each and every averment of Paragraphs 1 through 9, inclusive, of this Complaint.

11. Having already filed one meritless lawsuit in Oklahoma against Amtech, Webco has threatened yet another lawsuit in a none-too-subtle manner. In an email communication dated July 20, 2007, from Webco's Ken Bertram to Amtech's Jim Davidson, Webco states that it has been "patient" and that "to leave this matter open-ended without any concrete [409 alloy inventory] liquidation plan to work from is simply not acceptable" and that "we will find ourselves several months from now having to deal with this in another manner." (Emphasis added.) There exists an actual controversy between the parties in accordance with the requirements of 28 U.S.C. § 2201(a).

12. Amtech has issued no purchase order for the over-ordered material, nor has it otherwise agreed to any price credit terms or other requisite elements. Indeed, it was Webco's choice and its decision to terminate all relationships with Amtech. In the Oklahoma lawsuit, Webco averred: "Webco's supplier relationship ends (at the latest) on December 31, 2006." Amtech in the current year 2007 has no contractual or other obligation to purchase anything from Webco.

WHEREFORE, Amtech prays that the Court will declare the rights and legal relations of Amtech, that Amtech has no contractual or other obligation to purchase anything further from Webco.

## COUNT TWO
### (Sherman Act Section 2)

13. There is incorporated herein by reference, to the same full extent as if set forth verbatim herein, each and every averment of paragraphs 1 through 12 above, inclusive.

14. Webco has monopolized, attempted to monopolize and has combined and conspired with one or more others to monopolize the interstate trade and commerce in the United States in the product market for 29-4C alloy tubing and has achieved or has a dangerous probability of achieving a monopoly in said product market in the United States, with general and specific intent to achieve said monopoly, all in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

15. Webco has taken action pursuant to its monopolistic intent, as aforesaid, to injure competition and has specifically targeted Amtech to inflict competitive injury on Amtech as an integral part of its plan, intent and action to injure competition in the production and sale of 29-4C alloy tubing (the relevant product market) in the relevant geographic market of the United States. Among other things, Webco utilized abrupt credit restrictions and a sham lawsuit and threats to harm and injure Amtech as a part of its injury to competition generally. Amtech has sustained severe damages as a result of the actions, intent and plans of Webco as aforesaid.

## COUNT THREE
### (Intentional Tortious Interference with Business Relations)

16. There is hereby incorporated by reference, to the full extend as if set forth verbatim herein, each and every averment of Paragraphs 1 through 15 above, inclusive, of this Complaint.

1/1609175.1                                6

17. Webco has intentionally interfered with the business or contractual relations of Amtech with Carrier Corporation ("Carrier") in abruptly and severely changing credit terms for the sale of 29-4C alloy tubing to the detriment of Amtech, so as to harm Amtech and therefore harm Amtech's business or contractual relations with Carrier, to facilitate Webco's attempt to replace Amtech as a supplier of 29-4C alloy tubing to Carrier. Amtech has sustained severe damages as a result of Webco's actions and interference as aforesaid.

### COUNT FOUR
### (Breach of Contract)

18. There is hereby incorporated by reference, to the full extent as if set forth verbatim herein, each and every averment of Paragraphs 1 through 17 above, inclusive, of this Complaint.

19. Webco has breached the terms of its supply contract with Amtech in dishonoring the credit terms upon which the parties had agreed and unilaterally reducing credit terms from 50 days to 5 days, all to the great damage of Amtech.

WHEREFORE, as to Counts Two, Three and Four of this Complaint, Amtech prays that the Court will enter judgment in favor of Amtech and against Webco, in the sum or at least Six Million Dollars ($6,000,000), together with interest and costs, and (as to Count Two) reasonable attorney fees, and treble damages. As to Count Three, Amtech prays for recovery of punitive damages as determined by the jury.

_____
Thad G. Long
One of the Attorneys for Plaintiff
American Metal Technology, Inc.

OF COUNSEL:

Paul M. Sykes
BRADLEY ARANT ROSE & WHITE LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
205/521-8000

Plaintiff demands trial by Jury.

_____
Thad G. Long
Attorney for Plaintiff